IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| COSSENTINO CONTRACTING COMPANY, INC., <br> *Plaintiff*, <br><br> v. <br><br> CSX TRANSPORTATION, INC., <br> *Defendant* | Civil Action No. 24-cv-1883-ABA |

**MEMORANDUM OPINION**

Plaintiff Cossentino Contracting Company, Inc. ("Cossentino" or "Plaintiff") operates a construction company at 8505 Contractors Road in Baltimore County, Maryland. The property is located on Contractors Road, but a railroad line owned by Defendant CSX Transportation, Inc. ("CSX") runs along Contractors Road between the street and Plaintiff's property. Thus, access to Cossentino's property from Contractors Road has historically required traversing the rail line, through what the parties call the "Crossing." In more recent years, a road was constructed through an adjoining property, providing access to Cossentino's property without having to cross the rail line, and accordingly CSX has closed the Crossing.

Cossentino brought this action, seeking a declaratory judgment and injunction that Cossentino enjoys an easement to use the Crossing, either by prescription or necessity. It filed the action in state court, and CSX removed the case to this Court. Cossentino has moved to remand, contending that although there is complete diversity of citizenship, the $75,000 threshold for

1

diversity jurisdiction has not been satisfied. CSX opposes remand, and further requests that the complaint be dismissed for failure to state a claim. For the reasons set forth below, the Court denies both motions. CSX has shown that the amount in controversy exceeds $75,000. As for CSX's motion, accepting all of Cossentino's allegations as true, Plaintiff has stated a claim on which relief can be granted, and without discovery having occurred, the Court will not convert the motion to one for summary judgment.

## BACKGROUND

The present motions arise at the pleadings stage, and thus as to CSX's motion to dismiss, the Court must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). As to the question of whether the dispute exceeds the $75,000 threshold for diversity jurisdiction, the "removability of a case[,]" including the amount in controversy, "'depends upon the state of the pleadings and the record at the time of the application for removal.'" *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 367 (4th Cir. 2013) (citations omitted).

Cossentino's business is located at 8505 Contractors Road, referred to as the "Property." ECF No. 2 ("Compl.") ¶ 1. The Property is currently owned in trust by the Donna M. Cossentino Living Trust dated October 7, 2008. *Id.* ¶ 1 n.1. Prior to 2022, the Property was owned by John T. Cossentino, who,

together with his then-wife Carmen Cossentino, allegedly purchased the Property from James C. Alban Jr. by deed dated June 3, 1983. *Id.* ¶ 2.[1]

There are presently two ways to access the Property from public roads. To access the Property from Contractors Road—which from at least 1983 through "[r]ecently" was the "sole means of accessing the Property"—one "must exit off of Contractors Road and cross a railroad crossing [the 'Crossing'] over railroad tracks currently owned by CSX." *Id.* ¶¶ 3, 7, 9. The other way to access the Property arose recently. The closest public road to the Property that does not require crossing the rail line is Kelso Drive. The public portion of Kelso Drive still does not reach all the way to the Property, but "a portion of Kelso Drive has relatively recently been extended as a private roadway through Cosda Farm[] [LLC], which neighbors the Property[.]" *Id.* ¶ 6.[2]

After Kelso Drive, via the Cosda Farm extension, became a means to access the Property that did not require crossing the rail line, CSX "notified the plaintiff of CSX's unilateral decision to close the Crossing." *Id.* ¶ 7. Although

---

[1] The current record suggests that Mr. Cossentino did not acquire the Property until 1989, and that Carmen Cossentino was the owner for some period before then. *See* ECF No. 4-2 at 6. That discrepancy, however, is not material to whether Cossentino has stated a claim on which relief can be granted.

[2] There appears to be overlap in the ownership and/or management of Cossentino and Cosda Farm. According to CSX, the president and resident agent of Cossentino (Kristopher Davis) is also the managing member of Cosda Farms. *See* ECF No. 4-2 ¶¶ 4-11; ECF No. 10 at 11. There does not appear to be a dispute about those facts, but because they do not appear on the face of the complaint or on documents fairly incorporated in it, the Court does not consider them for purposes of CSX's motion to dismiss. Also, Plaintiff alternates between referring to the neighboring property as Cosda Farm and Cosda Farms. Although the complaint uses the plural form, it appears the correct entity name is Cosda Farm, LLC, *see, e.g.,* ECF 4-2 at 18, and thus the Court will use the singular form herein.

Cossentino acknowledges the Kelso Drive access, it alleges that closure of the Crossing "threatens to shut down the plaintiff's business." *Id.*[3]

Cossentino filed this action on May 23, 2024, in the Circuit Court for Baltimore County, Maryland. ECF No. 1 ¶ 1; ECF No. 1-2 at 7. It seeks a declaratory judgment and injunction permitting it to continue to use the Crossing and requiring CSX to "maintain the Crossing in place for use of the plaintiff and its business." Compl. ¶¶ 16, 20. Cossentino's contention is that because it used the Crossing for many years, and because until recently the Crossing was the Property's sole access to a public road, it "enjoys an easement to use the Crossing under [a] theory of a prescriptive easement, or, alternatively, under the theory of an easement by necessity." *Id.* ¶ 16.

As noted above, CSX removed the case to this Court on diversity jurisdiction grounds. ECF No. 1 ¶ 5. Cossentino has moved to remand, contending that the amount in controversy does not satisfy the $75,000 statutory threshold. ECF No. 7 (Plaintiff's remand motion); ECF No. 9 (Defendant's opposition brief); ECF No. 11 (Plaintiff's reply). CSX, for its part, has moved to dismiss the complaint, contending that even with all of Cossentino's allegations accepted as true, the complaint does not allege facts sufficient to establish that an easement by prescription or necessity was

---

[3] CSX has stated that the reason it closed the Crossing was because the Crossing, and three other railroad crossings in the area, had "come under increasing scrutiny in the last 12 years as a result of a catastrophic accident and derailment at the nearby Dump Road crossing of the CSXT railway corridor" in May 2013. ECF No. 4-1 at 9. These facts may become relevant or even dispositive following the conclusion of discovery, but because they fall outside the four corners of the complaint, the Court does not consider them at this stage.

created and remains in existence. ECF No. 4 (motion to dismiss); ECF No. 9 (Plaintiff's opposition brief); ECF No. 10 (Defendant's reply).

## ANALYSIS

### I.   Plaintiff's Motion to Remand

There is no dispute that Cossentino is a Maryland corporation headquartered in Maryland, and that CSX is a Virginia corporation with its principal place of business in Florida. ECF No. 1 ¶¶ 7-8; ECF No. 7-1. Accordingly, there is diversity of citizenship between the parties. But for a federal court to have diversity jurisdiction, the amount in controversy must also exceed $75,000. 28 U.S.C. § 1332(a).

As noted above, "[t]he removability of a case[,]" including the amount in controversy, "'depends upon the state of the pleadings and the record at the time of the application for removal.'" *Francis*, 709 F.3d at 367 (citations omitted). Where a plaintiff has sought damages, "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy[.]" 28 U.S.C. § 1446(c)(2). "If a complaint 'does not allege a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds [$75,000].'" *Francis*, 709 F.3d at 367 (alteration in original) (quoting *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993)).

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347

(1977). In other words, in such cases, "jurisdiction is to be tested by the value of the object or right to be protected against interference." *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 181 (1936). A party advocating for federal jurisdiction in such a case may establish the amount in controversy "by reference to the larger of two figures: the injunction's worth to the plaintiff or its cost to the defendant." *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 639 (4th Cir. 2010) (citing *Dixon v. Edwards*, 290 F.3d 699, 710 (4th Cir. 2002)). "More precisely, the relevant inquiry is whether the direct pecuniary value of the right the plaintiff seeks to enforce, or the cost to the defendant of complying with any prospective equitable relief, exceeds $75,000." *Brennan v. Stevenson*, No. 15-cv-2931-JKB, 2015 WL 7454109, at *4 (D. Md. Nov. 24, 2015) (cleaned up).

In identifying the amount in controversy, a defendant may "rely to some extent on reasonable estimates, inferences, and deductions." *Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 196 (4th Cir. 2017). Although a removing defendant has the burden to "prove by a preponderance of the evidence that the amount in controversy exceeds $75,000," *Francis*, 709 F.3d at 367 (cleaned up), remand is only appropriate where the court concludes "with legal certainty" that the requested injunction "is worth less than the requisite amount." *JTH Tax*, 624 F.3d at 640 (emphasis omitted). The party opposing remand need only identify the "good faith worth" of the requested injunctive relief, and "may aggregate smaller claims in order to reach the jurisdictional threshold." *Id.* at 639.

Cossentino argues the amount-in-controversy requirement has not been met because it "does not seek any damages, or other economic relief[.]" ECF No. 7-1 at 1.[4] Cossentino's position in the litigation is that it acquired and retains an easement to use the Crossing, either by prescription or necessity. Thus, it argues, even "[i]f the Plaintiff is successful on its claims, no money will change hands, and there will be no positive or negative effect on either party— the status quo will simply remain the same as it has for decades." ECF No. 7-1 at 3 (italics omitted). But that framing of the case assumes out of existence the very dispute at issue: whether an easement exists at all. The absence of a request for damages does not mean the amount in controversy is $0. Cossention's request for an injunction and declaration that an easement *does* exist is the "object of the litigation." *See Hunt*, 432 U.S. at 347. Thus the Court must estimate "the injunction's worth to the plaintiff or its cost to the defendant." *JTH Tax*, 624 F.3d at 639. If the "future value" that would be "generated by [an] injunction" would either benefit Cossentino, or cost CSX, more than $75,000, the amount in controversy threshold has been satisfied. *See id.*

Here, Plaintiff itself has alleged that closure of the Crossing "threatens to shut down the plaintiff's business." ECF No. 2 ¶ 7. Accordingly, the value of the object of the litigation is the value of Cossentino's business. As reflected in publicly available documents, Cossentino has been awarded bid contracts by

---

[4] All page number references herein refer to the ECF numbering, not necessarily the page numbering on the original document(s).

county governments within the State of Maryland totaling tens of millions of dollars in the past six years alone. *See* ECF No. 9-2 at 5, 6, 10, 13, 14, 18, 21 (reflecting contracts with Howard County totaling over $18.5 million); ECF No. 9-3 at 13 (reflecting $2.8 million contract from Anne Arundel County to Cossentino); ECF No. 9-4 at 16 (reflecting over $6.7 million paid by Baltimore County to Cossentino). Although a company's revenue does not necessarily translate into enterprise value, Cossentino has proffered no evidence to suggest that its business is worth less than $75,000. The record definitively establishes that the "worth" of the Crossing, as alleged by Plaintiff, exceeds $75,000. *See JTH Tax*, 624 F.3d at 639 (finding that plaintiff's desired injunctive relief, when "valued for the benefit it confers on [the plaintiff] . . . arguably yields a figure that exceeds the necessary jurisdictional amount"); *see also Bristol Univ. v. Accrediting Council for Indep. Colls. & Schs.*, 691 F. App'x 737, 740 (4th Cir. 2017) (based in part on plaintiff's allegation that "without accreditation, the school would be forced to close[,]" and because there was no dispute that "[t]he value of Bristol [University] as a business clearly exceeds $75,000[,]" holding that the dispute "undoubtedly satisfies the amount in controversy requirement for diversity jurisdiction"); *Swan Island Club, Inc. v. Ansell*, 51 F.2d 337, 340 (4th Cir. 1931) (finding that amount in controversy was satisfied where plaintiff alleged that a failure to enjoin the defendants from hunting ducks on the

plaintiff's property would "virtually destroy the capital value of the plaintiff's property").[5]

For these reasons, this Court has subject matter jurisdiction over this case, and CSX was permitted to remove it to federal court. Cossentino's motion to remand (ECF No. 7) will be denied.

## II.   CSX's Motion to Dismiss

Having satisfied its burden to establish federal subject matter jurisdiction, CSX has also moved to dismiss Cossentino's complaint. ECF No. 4. CSX contends that even accepting Cossentino's allegations as true, those allegations are insufficient to state a claim that an easement by prescription or necessity was created. (As noted above, the Court declines CSX's invitation to convert the motion to one for summary judgment; doing so would be inappropriate without permitting the parties to conduct discovery.) For the reasons set forth below, although discovery may reveal that Cossentino cannot prove by a preponderance of the evidence that it acquired, and maintains, an easement to use the Crossing, its allegations, accepted as true, entitle it to proceed to discovery.

---

[5] CSX contends that an injunction compelling CSX to re-open the Crossing would create serious, and expensive, safety risks not only to CSX, and to drivers and equipment using the Crossing, but also to the surrounding community. *See, e.g.*, ECF No. 4-1 at 9-10 and accompanying exhibits. Because the Court finds that the value of the injunction to Cossentino easily exceeds $75,000, the Court need not, and does not, reach the question of whether the "cost to the defendant" of an injunction, *JTH Tax,* 624 F.3d at 639, would exceed $75,000.

### A. Standard of Review

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a defendant asserts that, even assuming the truth of the alleged facts, the complaint fails "to state a claim upon which relief can be granted[,]" the defendant may move to dismiss the complaint. Fed. R. Civ. P. 12(b)(6).

To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The pleadings must contain sufficient factual allegations to state a facially plausible claim for relief. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As noted above, when considering such a motion, the Court must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King*, 825 F.3d at 212.

### B. The Property

Plaintiff's allegations, and the reasonable inferences drawn therefrom, control whether Plaintiff has stated a claim on which relief can be granted. Plaintiff did not include a map or image of the Property in the Complaint, but there is no dispute that the image below, submitted by CSX (ECF No. 4-2 at 34), shows (1) Cossentino's property (the "Property"), which appears as the triangular property on the left side of the image partially outlined in red, (2) the

10

CSX rail line at issue, which runs from the bottom-left corner to the top of the image, (3) Contractors Road, which runs on the north side of the CSX line, (4) the Crossing before it was closed, which the Court has marked with a yellow circle, and connected Cossentino's property to Contractors Road, (5) the adjoining property owned by Cosda Farm LLC, which CSX has labeled as Lot 1 and Lot 2, and which is labeled on the map as a location of "GT Mid Atlantic,"[6] and (6) Kelso Drive, which undisputedly is a public road that binds to Cosda Farm in the bottom-right of the image, and is a private road as it traverses Cosda Farm:

---

[6] In March 2022, Cosda Farm LLC identified itself on an access easement agreement as "having an address at 8505 Contractors Road[.]" ECF No. 4-2 at 18. That address is Cossentino's address. *See* Compl. ¶ 1. Thus, it appears from the present, limited record that, at least as of March 2022, Cosda Farm may have considered itself as owning, or operating on, the Cossentino property, and/or considered the properties to have merged in some way. As discussed below, the relationship between Cossentino and Cosda Farm may bear on whether an easement of necessity, if it ever existed, has terminated. But for ease of reference, and for purposes of this opinion, the Court refers to the Cossentino property as "Cossentino" or "the Property," and the adjoining property (Lots 1 and 2 on the image below) as "Cosda Farm."

11



According to Cossentino's complaint, prior to June 3, 1983, the Property was owned by James C. Alban Jr. Compl. ¶ 2. The complaint further alleges that in 1983, John T. Cossentino and his then-wife Carmen Cossentino purchased the Property. *Id.* John Cossentino died in April 2020. ECF No. 4-2 at 5. Following his death, ownership of the Property was transferred in 2022 by deed to the Donna M. Cossentino Living Trust dated October 7, 2008 (the "Trust"). Compl. ¶ 1 n.1; ECF No. 4-2 at 5-6 (deed).[7] As noted above, Cossentino alleges that the Crossing was "long" used as the "sole means of

---

[7] This case was brought by Cossentino Contracting Company, Inc., which apparently is a tenant on the Property, not the Trust, which currently owns the Property. It is not clear whether Cossentino Contracting Company is the proper party to bring this action for injunctive and declaratory relief. But because the parties have not addressed this issue, the Court does not reach that question.

12

accessing the Property." Compl. ¶ 9. The complaint does not allege that the Property and the Crossing were ever commonly owned.

The complaint acknowledges that there is currently a way to access the Property from public roads that does not require crossing the CSX line. Compl. ¶ 6. Cossentino alleges, however, that its access to Kelso Drive is via a "private roadway" across the Cosda Farm property, and "the Property enjoys no easement or other *right* to use this private roadway as its means of ingress and egress to and from the public right of way." *Id.* (emphasis added).

C.     **Maryland law on easements by prescription and necessity**

Cossentino contends that it obtained, and maintains, a "right to use and enjoyment of the Crossing, based on the doctrine of an easement by prescription, or, alternatively, based on the doctrine of an easement by necessity." Compl. ¶ 14. The Court begins by laying out the standards for easements by prescription and necessity.

"An easement is broadly defined as a nonpossessory interest in the real property of another[.]" *Rogers v. P–M Hunter's Ridge, LLC*, 407 Md. 712, 729 (2009) (quoting *Boucher v. Boyer*, 301 Md. 679, 688 (1984)). It involves "the privilege of doing a certain class of act on, or to the detriment, of another's land, or a right against another that he refrain from doing a certain class of act on or in connection with his own land[.]" *Rau v. Collins*, 167 Md. App. 176, 185 (2006) (quoting *Stansbury v. MDR Dev., L.L.C.*, 161 Md. App. 594, 610 (2005)). "An easement may be created by express grant, by reservation in a conveyance of land, or by implication." *Kobrine, L.L.C. v. Metzger*, 380 Md. 620, 635 (2004).

13

"An express easement by reservation often arises when a property owner conveys a portion of his property to another, which would otherwise render the retained part inaccessible, so the reservation permits a right-of-way." *Rogers*, 407 Md. at 729-30. "An easement by implication, on the other hand, 'may be created in a variety of ways, such as by prescription, necessity, the filing of plats, estoppel and implied grant or reservation where a quasi-easement has existed while the two tracts are one.'" *Id.* (quoting *Boucher*, 301 Md. at 688).

Cossentino invokes two theories of implied easement: prescription and necessity. "A prescriptive easement arises when a party makes an adverse, exclusive, and uninterrupted use of another's real property for twenty years." *Kirby v. Hook*, 347 Md. 380, 392 (1997). "A party's use is adverse if it occurs without license or permission[,]" *id.*, "that is, under a claim of right." *Oliver v. Hook*, 47 Md. 301, 311 (1877). "As a general rule, permissive use," such as use pursuant to a license, "can never ripen into a prescriptive easement." *Kirby*, 347 Md. at 393; *see also Condry v. Laurie*, 184 Md. 317, 321 ("The record in this case indicates that the Hittles used the private road for more than twenty years *in pursuance of a license*, and therefore did not acquire a prescriptive right.") (emphasis added); *Zimmerman v. Summers*, 24 Md. App. 100, 112 (1975) (noting that asking permission implies recognition of the owner's right to prevent the use, which is inconsistent with adversity). Where a landowner contends that no easement by prescription was created because permission had been granted for the use, the landowner has the burden to "show that the

use was permissive." *Kirby*, 347 Md. at 392 (citing *Cox v. Forrest*, 60 Md. 74, 80 (1883)).

Easements by necessity are different. They require that (1) the parcels originally were jointly owned (referred to as "unity of title"), (2) unity of title was severed "by conveyance of one of the parcels[,]" and (3) the easement was "necessary in order for the grantor or grantee of the property in question to be able to access his or her land, with the necessity existing both at the time of the severance of title and at the time of the exercise of the easement." *Stansbury v. MDR Dev., LLC*, 390 Md. 476, 489 (2006). In other words, "where a person conveys to another a parcel of land surrounded by other land, and there is no access to the land thus conveyed except over the grantor's land, the grantor gives to the grantee by implication a right of way over his own land to the land conveyed by him." *Condry*, 184 Md. at 321. "'[A] right of way of necessity can only be raised out of the land granted or reserved by the grantor, and never out of the land of a stranger.'" *Shpak v. Oletsky*, 280 Md. 355, 361 (1977) (quoting *Oliver v. Hook*, 47 Md. 301, 310 (1877)); *see also* Restatement (Third) of Prop.: Servitudes § 2.15 cmt. c (Am. Law Inst. 2000) ("Servitudes by necessity arise only on severance of rights held in a unity of ownership.").

"Easements by necessity normally cease to exist when the necessity for the easement ceases." *Stansbury*, 390 Md. at 491 (citing *Hancock v. Henderson*, 236 Md. 98, 105 (1964)); *see also Oliver*, 47 Md. at 309 (explaining that an easement by necessity "is only provisional"; it is "extinguished" if "the grantee acquires a new way to the estate previously reached by the way of necessity");

15

*see also* Restatement (Third) of Prop.: Servitudes § 4.3(1) (Am. Law Inst. 2000) ("A servitude by necessity lasts as long as the necessity that gave rise to its creation continues."). The doctrine of easements by necessity is "based upon public policy, which is favorable to full utilization of land and the presumption that parties do not intend to render land unfit for occupancy." *Stansbury*, 390 Md. at 488 (quoting *Condry*, 184 Md. at 321).

### D. Cossentino's claim to an easement by prescription

As noted above, easements by prescription require a plaintiff to plead and prove "an adverse, exclusive, and uninterrupted use of another's real property for twenty years." *Kirby*, 347 Md. at 392. Cossentino's allegations of an easement by prescription are that "[s]ince at least 1983 (and, upon information and belief, long before that), the owner(s) of the Property have used the Crossing as the sole means of accessing the Property[,]" and "[s]uch use has been open and notorious, continuous, and adverse, creating an easement by prescription for use of the Crossing." Compl. ¶ 9. These allegations are fairly bare-bones, and arguably are conclusory. After all, simply having used the Crossing, even for many years, does not establish an easement by prescription, because such use must have been under a claim of right, and without CSX having granted permission. But particularly because CSX bears the burden to "show that the use was permissive," *Kirby*, 347 Md. at 392, the Court

16

concludes Cossentino's allegations are sufficient to state a prescriptive easement claim and proceed to discovery.[8]

### E. Cossentino's claim to an easement by necessity

Cossentino alternatively contends that an easement was created by necessity. As noted above, a party seeking judicial recognition of an easement by necessity must prove (1) there was "unity of title" between the parcels at issue, here the Property and the land between the Property and Contractors Road; (2) that unity of title was "sever[ed]" through "conveyance of one of the parcels"; and (3) following such severance, and through the present day, an easement was and remains "necessary" for the grantee of an allegedly landlocked parcel to "access his or her land." *Stansbury*, 390 Md. at 489.

Cossentino's allegations in support of an easement-by-necessity theory are that when John T. Cossentino (and/or Carmen Cossentino, *see* n.1, *supra*) purchased the Property in 1983, the "sole means of accessing the Property" was via the Crossing. Compl. ¶ 9. Cossentino further alleges "on information and belief" that the Crossing was the sole means to access the Property "long before" 1983. *Id.* Cossentino also alleges that, although it can presently access the Property via Kelso Road, the Crossing remains necessary because "the

---

[8] CSX also argues that Plaintiff's claim to an easement by prescription is barred by *Montgomery County v. Bhatt*, 446 Md. 79 (2016), where the Supreme Court of Maryland held that railway lines owned by a "quasi-public corporation" are not "subject to a claim for adverse possession, without evidence of clear abandonment or a clear shift away from public use." *Id.* at 92; *see also* ECF No. 4-1 at 11-13. The elements of adverse possession and easements by prescription do substantially overlap. *See, e.g.*, *Breeding v. Koste*, 443 Md. 15, 28-29 (2015). But Cossentino's claim here is not to an ownership interest in the Crossing land itself, but rather an easement to use the Crossing.

17

Property enjoys no easement or other right" to use the "private roadway" portion of Kelso Road. *Id.* ¶ 6. "[I]f the Crossing is closed," Cossentino contends, "the Property will be 'land-locked' and without a means to legally access a public street to provide ingress and egress to and from the Property[.]" *Id.* ¶ 10.

Cossentino's easement-by-necessity claim fails because the complaint does not allege an initial unity of the parcels, or severance of that unity to create a necessity. CSX describes this pleading failure as "conclusory." ECF No. 4-1 at 13. But the problem is more fundamental than this: nowhere does the complaint allege, even in conclusory fashion, that the Property and the land that the Crossing is on were ever commonly owned, or that such common ownership was severed (or when), or that such severance (if it occurred) created a necessity that gave rise to the Crossing. Without alleging those facts, the complaint does not state an easement-by-necessity claim on which relief can be granted.

Because the Court concludes that Cossentino has not adequately alleged that an easement by necessity was ever created, it does not reach the question of whether Cossentino has adequately alleged that such necessity remains even though Cossentino has alternative access to the Property via Kelso Road. Nonetheless, because discovery will proceed on Cossentino's easement-by-prescription claim, the Court will permit the parties to take discovery as to Cossentino's easement-by-necessity claim as well. That is because the two are interrelated: if an easement was created and the basis for it was necessity, that

18

may constitute a defense to Cossentino's easement-by-prescription claim. *See, e.g.*, *Kirby*, 347 Md. at 392 & *Condry*, 184 Md. at 321 (explaining that a person cannot establish an easement by prescription when the use is by license or with permission); *see also* Restatement (Third) of Prop.: Servitudes § 2.16 cmt. f (Am. Law Inst. 2000) ("[U]ses made pursuant to licenses are not adverse, nor are uses made pursuant to servitudes created expressly, by implication, or by necessity.").

But also, CSX has treated Cossentino's principal claim as one for easement by necessity and contends that the principal reason it was entitled to close the Crossing was because there is "substantial" overlap in ownership and/or management between Cossentino and the Property, on one hand, and Cosda Farm and its parcel, on the other, such that any necessity for Cossentino to use the Crossing has ended. *See* ECF No. 4-1 at 13-18. CSX argues that Cossentino seeks to continue to use the Crossing, rather than Kelso Drive, solely "out of convenience." *Id.* at 18. Cossentino disputes the contention of substantial common ownership, and alleges that such access is solely via a "private roadway," access to which could be revoked. *See* Compl. ¶ 6. CSX is correct that an easement by necessity "exists only so long as the necessity itself remains." *Shpak*, 280 Md. at 363. And "[m]ere inconvenience will not be sufficient to justify the finding of a way of necessity." *Id.* (quoting *Condry*, 184 Md. at 322). In any event, the scope of discovery shall include Cossentino's easement-by-necessity claim and any corresponding defenses.

19

## CONCLUSION

For the foregoing reasons, Plaintiff Cossentino's motion to remand, ECF No. 7, and Defendant CSX's motion to dismiss, ECF No. 4, will both be denied. A separate order follows.

Date: October 30, 2024                              /s/
                                              Adam B. Abelson
                                              United States District Judge